IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GUADALUPE VILLA-RODRIGUEZ,**

    Petitioner,                                       Civ. No. 2:15-cv-02690
                                                          Crim. No. 2:10-cr-0225(4)
    v.                                                   JUDGE ALGENON L. MARBLEY
                                                          Magistrate Judge King

**UNITED STATES OF AMERICA,**

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on Petitioner's *Motion to Vacate* (ECF No. 247), Respondent's *Response* (ECF No. 252),, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Facts and Procedural History

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> A federal grand jury charged Villa-Rodriguez and five co-defendants with various hostage-taking and firearm offenses arising out of the kidnapping of a woman and her two-year-old child due to her husband's failure to pay a drug debt. Pursuant to a written plea agreement, Villa-Rodriguez, a Mexican citizen, pleaded guilty to possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5). Villa-Rodriguez's presentence report set forth a guidelines range of 210 to 262 months of imprisonment. Because that range exceeded the ten-year statutory maximum, the maximum became the guidelines sentence. *See* USSG § 5G1.1(a). The district court sentenced Villa-Rodriguez to 111 months of imprisonment.
>
> Villa-Rodriguez subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming in part that his counsel provided ineffective assistance by failing to file a notice of appeal. The district court granted Villa-Rodriguez's motion on that claim, vacated the original judgment, and directed entry of a new judgment to allow the filing of this appeal.

*United States v. Guadalupe Villa-Rodriguez*, No. 14-3214 (6th Cir. Jan. 14, 2015). *See Notice* (ECF No. 242). On appeal, Petitioner asserted, *inter alia*, that "there was an inadequate factual basis for his guilty plea." *Id.* On January 14, 2015, the Court of Appeals affirmed Petitioner's conviction and sentence. *Id.* On March 23, 2015, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari. Villa-Rodriguez v. United States*, No. 14-8405 (U.S.S.Ct. Mar. 23, 2015). *See Notice* (ECF No. 246).

Petitioner filed the current *Motion to Vacate* on August 5, 2015. He alleges that his guilty plea was not knowing, intelligent and voluntary because his attorney performed in a constitutionally ineffective manner by advising him to plead guilty when there was no factual basis to support the plea.

> I did not possess a firearm during the period I was illegally in the U.S. I never accepted possessing one during the plea hearing. I was in a home, not mine, where there were firearms but I did not possess them. Counsel coerced me to plead guilty because, he said: "There were sufficient elements of the crime." During the reading of the factual basis at the plea hearing, it was never established that I possessed the firearm in any way. Had counsel informed me that there were no sufficient elements to be convicted of the charges I would not have pleaded guilty but gone to trial.

*Motion to Vacate* (PageID# 1078). Respondent contends that Petitioner's claim is without merit.

### Successive Petitions

This is not Petitioner's first motion to vacate under § 2255. *See Motion to Vacate* (ECF No. 140). Ordinarily, a second or successive motion to vacate may be pursued only if authorized by the Court of Appeals. 28 U.S.C. §§ 2244(b)(3)(A), 2255(h). However, not every numerically second motion to vacate or habeas corpus petition qualifies as a second or successive petition requiring authorization. *In re Sims*, 111 F.3d 45, 47 (6th Cir 1997); 28 U.S.C. § 2244(b).

> Whether a petition (a term we use interchangeably with "application") is "second or successive" within the meaning of § 2244(b) does not depend merely on whether the petitioner filed a prior application for habeas relief. The phrase is

2

>instead "a 'term of art' that is 'given substance' by the Supreme Court's habeas cases." *In re Salem*, 631 F.3d 809, 812 (6th Cir. 2011) (quoting *Slack v. McDaniel,* 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). Accordingly, in a number of cases, the Court has held that an application was not second or successive even though the petitioner had filed an earlier one. In *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), the petitioner filed a second petition that presented a claim identical to one that had been included in an earlier petition. The claim had been unripe when presented in the earlier petition. The Court treated the two petitions as "only one application for habeas relief [.]" *Id*. at 643, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849. In *Panetti v. Quarterman*, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the Court held that an application that presented a claim that had not been presented in an earlier application, but that would have been unripe if it had been presented then, was not second or successive. *Id*. at 945, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662. In *Magwood v. Patterson*, — U.S. —, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), the Court made clear that an application challenging an earlier criminal judgment did not count for purposes of determining whether a later application challenging a new judgment in the same case was second or successive. *Id*. at 2797–98.

*Storey v. Vasbinder,* 657 F.3d 372, 376–77 (6th Cir. 2011).  In *Storey,* the Sixth Circuit held that a habeas corpus petition filed after a remedial appeal, ordered in response to an earlier petition, does not constitute a successive petition even if it includes claims that could have been included, but were not, in the first petition. *Id.* at 377-78. Respondent does not characterize the current *Motion to Vacate* as a second or successive petition within the meaning of 28 U.S.C. §§ 2244(b)(3)(A), 2255(h). This Court concludes that the current *Motion to Vacate* is not subject to dismissal or transfer to the Sixth Circuit as a second or successive petition.

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure.  *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) *(per curiam)*.  Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the

3

trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995)(unpublished)).

## Petitioner's Direct Appeal

In his direct appeal, Petitioner asserted, *inter alia*, that "there was an inadequate factual basis for his guilty plea." *United States v. Guadalupe Villa-Rodriguez*, No. 14-3214. Because that claim had not been raised before this Court, the Sixth Circuit reviewed the claim for plain error only:

> "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. McCreary-Redd*, 475 F.3d 718, 722 (6th Cir. 2007) (internal quotation marks omitted). The district court may determine the existence of a factual basis from several sources, including witness testimony that is confirmed by the defendant. *See United States v. Lalonde*, 509 F.3d 750, 762 (6th Cir. 2007); *McCreary-Redd*, 475 F.3d at 722.
> A conviction under 18 U.S.C. § 922(g)(5) requires the following elements: "(1) the defendant is an illegal alien, (2) he knowingly possessed the firearm, and (3) the firearm traveled in or affected interstate commerce." *United States v. Luna-Santillanes*, 554 F. App'x 402, 409 (6th Cir. 2014). Villa-Rodriguez challenges only the factual basis for the possession element. A conviction under § 922(g) "may be based on actual or constructive possession of a firearm." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* (internal quotation marks omitted).
> The witness testimony presented by the government and confirmed by Villa-Rodriguez provided "some evidence" that he knowingly possessed a firearm. *See United States v. Mobley*, 618 F.3d 539, 547 (6th Cir. 2010) (noting the "quantum of information required to satisfy the Rule 11(b)(3) 'factual basis'

4

> requirement for a guilty plea is lower" than that required at trial). According to Special Agent Amy Nye, the victim "saw a number of firearms that were being carried, loaded, and passed among the eight men inside the house" where she and her child were held. (RE 132, Plea Tr. 19, Page ID # 437). Special Agent Nye further testified that Villa-Rodriguez was left in control of the hostages and two firearms: "It was agreed amongst the men that Guadalupe Villa Rodriguez would remain inside the house with [the victim], the child, and two remaining rifles while the other five men would leave to meet with [the victim's husband]." (*Id*. at 20, Page ID # 438). Villa-Rodriguez agreed that the agent's statement of facts was "true and correct in all material respects." (*Id*. at 22, Page ID # 440). The district court did not err, let alone plainly err, in determining that there was a sufficient factual basis for Villa-Rodriguez's guilty plea.

*Id.* Petitioner has failed to point to an intervening change in the law since the Sixth Circuit issued this decision, nor has he established any other exceptional circumstance. To the extent that Petitioner seeks to raise in this Court the same claim presented to and rejected by the Sixth Circuit, then, he may not re-litigate that claim in the current *Motion to Vacate*. *See DuPont*, 76 F.3d at 110.

## Ineffective Assistance of Counsel

To the extent that Petitioner's current claim of ineffective assistance of counsel may be construed as different from the claim presented in his direct appeal, that claim fares no better. Petitioner alleges that his trial counsel was ineffective in advising Petitioner to plead guilty because there was not a factual basis for the plea and because he did not possess a firearm. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

5

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland,* 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

A defendant may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland*'s two part test of deficient performance and prejudice also applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). In order to establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59.

Petitioner asserts that his trial attorney performed in a constitutionally ineffective manner because he failed to advise him that the government lacked a factual basis for his guilty plea and could not have established Petitioner's possession of a firearm. The record belies this assertion.

It must be remembered that the *Indictment* (ECF No. 1) charged Petitioner with fourteen (14) serious felony counts. Petitioner pled guilty, pursuant to the *Plea Agreement* (ECF No. 80), to only Count 13, which charged him with possession of a handgun while being an alien illegally in the United States. At his change of plea proceeding, *see Transcript of Plea Proceedings* (ECF No. 132), Petitioner testified under oath, *see id.* (PageID# 424), that he had discussed with his attorney - with the assistance of an interpreter - the charges against him and that he understood the nature and meaning of the offense to which he was pleading guilty. *Id.* (PageID #422-23). He had told his attorney everything he knew about the case against him and he believed that his attorney was fully informed about the facts and circumstances on which the charge was based. His attorney had fully advised him as to any potential defenses to the charge. *Id.,* (PageID #426-27). He was satisfied with his attorney's advice and representation. *Id.,* (PageID #427). The Court advised petitioner of the elements of the offense to which he pleaded guilty:

> THE COURT: Every criminal offense has certain elements, or basic facts, that the government must prove by competent evidence beyond a reasonable doubt before a jury could find you guilty. In this case, the elements of the offense of possession of a firearm by an illegal alien are as follows: First, the defendant is an alien who was illegally and unlawfully in the United States;
> Second, that the defendant knowingly possessed a firearm;
> Third, the firearm had been shipped and transported in interstate commerce, and;
> Fourth, these acts occurred within the Eastern Division of the Southern District of Ohio on or about the time set forth in the indictment.

*Id.,* (PageID #428). Petitioner expressly stated that he understood that these are the elements of the offense with which he was charged. *Id.* Petitioner indicated that he was pleading guilty of his own free will and volition; he denied that he had been threatened or forced into entering the guilty plea. *Id.,* (PageID #435).

An investigating agent summarized the facts underlying the case as follows:

7

**On December 14th, 2009**, Matias Gallegos-Villagomez and Guadalupe Villa Rodriguez traveled in two cars along with six other men, to attempt to locate Manuel Hernandez.  Several weeks prior, Hernandez had stolen a kilo of cocaine that had been delivered to him by Mauricio Martinez Diaz.  The defendants were now looking for Hernandez to obtain the money he owed to Augustin, aka Pedro, for these drugs.  In the early evening, in an area just north of Morse Road around Urban Drive and Kingshill Drive, the men saw Hernandez and a shootout ensued. Hernandez fled but the men were able to follow a light blue Dodge Caravan being driven by Monica Barrera, the girlfriend of Hernandez.  Their three-year-old daughter was also in the vehicle.

Shortly thereafter, the eight men in both cars were able to block Barrera's car and several men made entry into their vehicle with guns drawn. The men forced Barrera out of the driver's seat and then covered her eyes.  **The Dodge Caravan was then driven to 2166 Gaver Lane, the residence of Augustin.  Barrera and her daughter were taken inside the residence and the Dodge Caravan was driven away from the scene and left in a parking lot on the west side of Columbus.**

While inside the house, a series of phone calls were made to Hernandez by Augustin demanding $20,000 to $30,000 in payment for the safe release of Barrera and the child.

Though Barrera and the child were not shackled or restrained, they also were not free to leave the house.  During this time, Barrera also saw a number of firearms that were being carried, loaded, and passed among the eight men inside the house. By 10 p.m. that evening, law enforcement had become aware of this incident and set up surveillance on the house at 2166 Gaver Lane.

Around 10:45 p.m., Martin and Mauricio left the residence and entered a Volkswagen Jetta, Ohio license plate EYE-4081 that belonged to another of the remaining men.  When going to this vehicle, Martin was carrying a loaded Ejercito Argentino, .45 caliber pistol bearing serial number 27222.  Mauricio agreed to drive the Jetta, and Martin placed the handgun under the driver's seat. Officers with the Columbus Police Department observed the Volkswagen Jetta leaving the residence and arranged for it to be stopped, and both men were arrested.  The .45 caliber pistol was seized after it was found sticking out from under the driver's seat.  This gun was manufactured in Argentina and had been imported into the state of Virginia.

**Meanwhile, inside the residence, negotiations with Hernandez had concluded and the remaining six men made plans to leave the residence to attempt to meet with him.  It was agreed amongst the men that Guadalupe Villa Rodriguez would remain inside the house with Barrera, the child, and two remaining rifles while the other five men would leave to meet with**

8

> **Hernandez.  At 12:50 a.m. on December 15, 2009, Matias, along with the other five men, left the residence.**
>
> The men were armed with a loaded Ruger P95DC, a 9mm handgun, a loaded Haskel .45 caliber handgun, and Matias Gallegos-Villagomez carried a loaded sawed-off Remington 870 Wingmaster shotgun.  All five men entered a black Ford F-150 pickup and left the residence.  CPD officers stopped the vehicle and arrested Matias and the four other men.  Officers immediately noticed and seized the sawed-off Remington shotgun which was in plain view on the floor of the interior of the pickup truck.  This Remington shotgun, bearing serial number T641539, was manufactured in the state of New York.  Officers also seized the loaded Ruger and Haskel firearms from inside the pickup truck.  Augustin was found in possession of Barrera's Mexican identification card and a digital memory card from her camera.
>
> Ultimately, a search warrant was executed at 2166 Gaver Lane around 6 a.m. on December 15th 2009, and Barrera and her child were safely recovered and Guadalupe Villa Rodriguez were [sic] arrested.
>
> **Inside the residence, officers found a Mosin-Nagant Model 1944 rifle bearing serial number RH588/13598, and a Feather Industries Model AT-9 rifle bearing serial number A90355.  ATF determined that the Mosin-Nagant rifle was manufactured in Russia and imported through the state of Illinois, while the Feather Industries rifle was manufactured in the state of [] Colorado.  Therefore, both weapons had previously traveled in interstate commerce.**
>
> **ICE also determined that defendants Matias Gallegos-Villagomez and Guadalupe Villa Rodriguez were citizens of Mexico and they were illegally within the United States**.

*Id.*  (PageID# 436-39)(emphasis added).  The emphasized portions of that statement establish the elements of the offense to which Petitioner pleaded guilty, including the element of either actual or constructive possession of firearms. *See United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). Petitioner agreed that that statement was "true and correct in all material respects." *Transcript of Plea Proceedings* (PageID# 440). He admitted his guilt to the charge because he was "in fact, guilty of the offense. . . ." *Id.,* The Court accepted Petitioner's plea of guilty to the offense of possession of a firearm by an illegal alien after finding, without objection,

9

that Petitioner's plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." *Id.* (PageID# 441).

A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976). Based on this record, Petitioner will not now be heard to deny the facts to which he agreed under oath.

It is significant, too, that Petitioner did not challenge his counsel's performance on this basis in his first motion to vacate under § 2255.[1] At the evidentiary hearing held in connection with that filing, Petitioner – who was proceeding at that point with the assistance of different counsel – did not dispute the facts underlying the charge to which he pleaded guilty. *See Report and Recommendation* (ECF No. 215, PageID# 924-25). Moreover, he testified that he had met with his attorney approximately six (6) times prior to trial and that his attorney had discussed the charges against Petitioner. *See id*. (PageID# 924). His trial attorney testified that he had reviewed with Petitioner, with the assistance of an interpreter, the charges against him and the evidence in the case. *See id.* (PageID# 926). *See also Affidavit of W. Joseph Edwards*, ¶ 9 (ECF No. 171-1, PageID# 728)("The evidence against [Petitioner]was incredibly strong and I believe his plea to Count 13 of the Indictment was in his best interest. Further, I believe that Mr. Villa-Rodriguez entered his plea of guilty knowingly, voluntarily, and intelligently.")

In light of this record, and as the Sixth Circuit has already held, there was a sufficient factual basis for Petitioner's guilty plea. *United States v. Guadalupe Villa-Rodriguez*, No. 14-3214. Petitioner has therefore failed to establish that his counsel acted deficiently in advising him

---

[1] In his first *Motion to Vacate*, Petitioner asserted three claims of ineffective assistance of trial counsel: that his counsel coerced his guilty plea by assuring petitioner that he would be sentenced to no more than five years incarceration if he pleaded guilty (claim one); that his attorney failed to object to an increase in the sentence recommended under U.S.S.G. § 2A4.1, failed to provide petitioner with discovery materials, failed to conduct adequate research and investigation in regard to the filing of pre-trial motions and failed to file a sentencing memorandum (claim two); that his attorney failed to file an appeal after having been requested to do so (claim three).

10

to plead guilty because there was not a factual basis for that plea. *See Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir.1999) ("[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues."). The Court also concludes that Petitioner has failed to establish that, on this record, he has established that, but for his counsel's advice, he would not have pleaded guilty to Count 13 of the *Indictment*, but would instead have gone to trial on all fourteen (14) counts of the *Indictment* in which he was charged.

For all these reasons, it is **RECOMMENDED** that the *Motion to Vacate* (ECF No. 247), be dismissed.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

       *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

October 27, 2016